IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOHN A. HERSH,<br><br>       Petitioner,<br><br> vs.<br><br><br>EARL HOUSER, Superintendent, Goose Creek Correctional Center,[1]<br><br>       Respondent. | No. 3:17-cv-00185-JKS<br><br>MEMORANDUM DECISION |

  John A. Hersh, a state prisoner now represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Hersh is in the custody of the Alaska Department of Corrections and incarcerated at Goose Creek Correctional Center. Respondent has answered, and Hersh has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

  Hersh was charged with various sexual offenses alleged to have been committed against his daughters, A.H. and C.H. Specifically, he was indicted on one count of first-degree sexual abuse of a minor for engaging in sexual penetration with A.H.; four counts of second-degree

---

[1]   Earl Houser, Superintendent, Goose Greek Correctional Center, is substituted for the State of Alaska, Attorney General for Alaska. FED. R. CIV. P. 25(c); Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts; *Stanley v. Cal. Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994).

-1-

abuse of a minor for engaging in sexual contact with A.H. and C.H.; and one count of incest for engaging in sexual penetration with A.H. The State subsequently added two counts of first-degree unlawful contact after Hersh sent birthday cards to A.H. and C.H. in violation of his conditions on release. On direct appeal of his conviction, the Alaska Court of Appeals laid out the following facts underlying the charges against Hersh:

> Hersh began touching A.H. inappropriately when she was about nine or ten years old. Hersh continued to touch A.H. between ten and twenty times a month over the course of a "couple years." Hersh also began touching C.H., A.H.'s younger sister, when she was eight years old. The girls decided not to tell anyone about the abuse because they did not think anyone would believe them, and they believed their father would get mad.
> One evening, C.H. and A.H. finally told their mother, Suzanne Hersh, about the abuse they had suffered. The next day Suzanne reported her daughters' statements to the Alaska State Troopers in Palmer.
> Investigator Sherry Ferno obtained a *Glass* warrant,[2] and Suzanne participated in a recorded telephone conversation with Hersh. Suzanne then agreed to meet Hersh in person at a Wal–Mart in Wasilla. Hersh made several admissions during this conversation. Hersh admitted that "[t]he kids don't lie." When Suzanne asked if Hersh used more than just his hands, he answered yes. He promised that he would "never offend [his] daughters' honor in any way again ever" and would "not touch [his] girls inappropriately again." Hersh said, "[E]very time I heard that word child molester, it made me sick. Because that's what I've done."

*Hersh v. State*, No. A-10540, 2011 WL 6450909, at *1 (Alaska Ct. App. Dec. 21, 2011).

Prior to trial, the State filed a motion in limine under the Alaska rape shield statute, Alaska Statute 12.45.045, to prevent Hersh from introducing evidence that, when A.H. was three or four years old, she reported to Suzanne that she had been abused by her paternal grandfather. Hersh opposed the motion and applied for an exception to the rape shield statute, arguing that it was not applicable because A.H. had not engaged in sexual conduct by being a victim of sexual abuse and the evidence was relevant to: 1) whether A.H. and C.H. were confusing the events involving their grandfather with events involving their father; and 2) whether Suzanne was biased against Hersh. The State opposed the application on the grounds that evidence that A.H. had previously been abused by her grandfather was not relevant to any issue at trial, the evidence

---

[2] *See State v. Glass*, 583 P.2d 872, 881 (Alaska 1978) (requiring that a warrant be obtained to record a conversation, unless all parties consent to the recording).

was more prejudicial than probative, and the incident was so remote in time as to be presumptively inadmissible under AS 12.45.045(b). The trial court held an *in camera* hearing on the admissibility of the evidence, at which Suzanne testified. Following oral argument, the court denied Hersh's application, concluding that the evidence would not be probative to show that A.H. was confused because of the different nature of the allegations; that no evidence showed that Suzanne had became angry at her husband as a result of his father's conduct; and any probative value of the evidence was outweighed by its potential for unfair prejudice, confusion of the issues, and invasion of the privacy of A.H.

At trial, the State introduced, among other evidence, A.H.'s and C.H.'s testimony and the recorded admissions that Hersh had made to his wife under the *Glass* warrant. The State also presented the testimony of Suzanne as well as a forensic nurse who had conducted the Sexual Assault Response Team ("SART") examination on the complaining witnesses. During Suzanne's testimony for the State, the prosecutor asked Suzanne about Hersh's prior incarcerations, and on cross-examination, defense counsel asked her to clarify that the incarcerations had only been for DUI offenses. At the conclusion of trial, the jury convicted Hersh of all 8 counts. The trial court subsequently sentenced him to a composite sentence of 95 years' imprisonment, with 45 years suspended.

Through counsel, Hersh appealed his conviction, arguing that: 1) the trial court erred in refusing to admit evidence that one of the victims had been sexually abused by Hersh's father; 2) the trial court miscalculated Hersh's composite sentence; and 3) the trial court failed to articulate sufficient findings to support the sentence. The State agreed that the trial court miscalculated the length of the suspended portion of the composite sentence, but otherwise opposed the appeal. The Court of Appeal unanimously remanded for correction of the sentence but affirmed the judgment against Hersh in all other respects in a reasoned, unpublished opinion issued on December 21, 2011. *Hersh*, 2011 WL 6450909, at *4. The Supreme Court summarily denied Hersh's petition for review on April 4, 2012.

-3-

Case 3:17-cv-00185-JKS   Document 44   Filed 11/21/19   Page 3 of 16

Hersh then filed a *pro se* application for post-conviction relief alleging that trial and appellate counsel both rendered ineffective assistance in a variety of ways. Although counsel was appointed to represent him, Hersh elected to represent himself. The trial court held a one-day evidentiary hearing, at which Hersh and his trial counsel testified. The trial court then issued written findings of fact and conclusions of law denying Hersh's claims of ineffective assistance. Docket No. 27-39 at 23-34. The Court of Appeal unanimously affirmed the denial of relief in a reasoned, unpublished opinion issued on May 17, 2017. *Hersh v. State*, No. A-12087, 2017 WL 2209873, at *10 (Alaska Ct. App. May 17, 2017). The Alaska Supreme Court denied the petition for review without comment on August 1, 2017.

Hersh timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court dated August 23, 2017. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1),(2). His accompanying request for appointed counsel was granted, Docket No. 7, and an Amended Petition (Docket No. 22 "Petition") was filed. Briefing is now complete, and the case is before the undersigned judge for adjudication.

## II. GROUNDS/CLAIMS

In his counseled Petition before this Court, Hersh raises a number of ineffective assistance of counsel claims: 1) failure to seek dismissal of the indictment based on the presentation of false testimony to the grand jury regarding Hersh's alleged failure to deny the allegations of sexual abuse; 2) failure to seek dismissal of the indictment based on the admission of evidence to the grand jury that Hersh had invoked his constitutional right to silence after his arrest; 3) failure to object to Suzanne's materially false testimony at trial that Hersh had never denied the allegations of abuse; 4) failure to object to the admission of Hersh's prior DUI convictions and incarceration; 5) failure to adequately cross-examine the forensic nurse who conducted the SART examination of the complainants; and 6) failure to seek admission of the prior abuse allegations made against Hersh's father.

-4-

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S.

Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Hersh's counseled Petition alleges that trial and appellate counsel rendered ineffective assistance for a number of reasons. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht*

-6-

harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Hersh must show that either trial or appellate counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Ground 1.     *Failure to seek dismissal of indictment based on false testimony to grand jury*

Hersh first argues that "trial and appellate counsel incompetently failed to seek dismissal of the indictment based on the presentation of materially false and misleading testimony to the grand jury regarding Hersh's alleged failure to deny allegations of sexual abuse." According to Hersh, the prosecutor mischaracterized Hersh's recorded conversations with his wife when she informed the grand jury that Hersh had never denied his wife's accusation that he had inappropriately touched their children. On post-conviction review, the Court of Appeals considered and rejected this claim as follows:

> Hersh claims that, at grand jury, the prosecutor misrepresented the content of Suzanne Hersh's two recorded conversations with Hersh about the sexual abuse. Specifically, Hersh claims that the prosecutor lied to the grand jurors when she told them that, when Suzanne confronted Hersh about their daughters' allegations, Hersh "didn't make any denials".
> Hersh also claims that Investigator Ferno misrepresented the content of the

-7-

recorded conversations when she testified that, during Suzanne's first conversation with Hersh (*i.e.*, the telephone conversation), Hersh "didn't make admissions, and he really didn't deny it either. He just said 'no', and that was it."

The record shows that, contrary to what the prosecutor told the grand jurors, Hersh *did* deny the allegations of sexual abuse during his first recorded conversation with Suzanne—the conversation that took place over the telephone. In the following excerpts from that first conversation, Hersh made direct denials:

> *Suzanne*: I'm just wondering if it's true or not, John, . . . that you've been touching them where you shouldn't be.
>
> *Hersh*: No.
>
> . . .
>
> *Hersh*: I'm not gonna get angry with the girls. You know. We watch movies. We haven't been doing anything inappropriately, you know.
>
> . . .
>
> *Suzanne*: Is that what I said? No, that's not what I said. I said before that, if they're gonna need counseling or something, something has to happen.
>
> *Hersh*: Nothing has happened, Suze. Can we talk together as a family? Because I mean, you know what happens. You get involved with anything with the state, automatically, you know—you know, I've had enough of that.
>
> *Suzanne*: I just, I don't understand why they would both say it, John.
>
> *Hersh*: Well, I don't understand why either, Suze. I mean it hasn't, it's, it's been nothing. . . . You know, same shit as, you know, pinch their butt, poke 'em in the sides, tickling 'em, wrestling 'em around. Nothing.
>
> . . .
>
> *Suzanne*: . . . You don't know how hard it was for her to say it either. She didn't wanna tell me, and I had to pry it out of her. So did you touch them, John?
>
> *Hersh*: No, Suze. They're my girls.
>
> . . .
>
> *Suzanne*: Has something happened, John?
>
> *Hersh*: No, Suze. I mean, nothing that—no.
>
> . . .
>
> *Suzanne*: You're telling me that you haven't touched them inappropriately?
>
> *Hersh*: That's what I'm telling you.

-8-

>    As shown by these excerpts, Hersh repeatedly denied the allegations of sexual abuse during these portions of the recorded telephone conversation. Thus, Hersh's trial attorney had a supportable argument that both the prosecutor and the investigator mischaracterized Hersh's responses when they summarized them to the grand jurors.
>    However, as we have already explained, Hersh made several admissions of criminality during the second recorded conversation with his wife—the conversation that took place face-to-face. During that second recorded conversation, when Suzanne asked Hersh if he had abused their children using more than just his hands, Hersh answered yes. Hersh promised Suzanne that he would "never offend [his] daughters' honor in any way again ever", and that he would "not touch [his] girls inappropriately again." Hersh also told Suzanne that whenever he heard someone use the term "child molester", it "made [him] sick" because "that's what [he had] done."
>    In light of Hersh's admissions during the face-to-face conversation with his wife, Judge Smith concluded that Hersh's trial attorney, Weinraub, could competently conclude that a motion to dismiss the indictment on this issue would not have succeeded. We reach the same conclusion.

*Hersh*, 2017 WL 2209873, at *3-4.

The state courts' conclusion that Hersh did not show that a motion to dismiss based on the false testimony would have been successful is both reasonable and fully supported by the record. For this reason, Hersh fails to show *Strickland* prejudice sufficient to warrant federal habeas relief here.

Ground 2.    *Failure to seek dismissal of indictment based on evidence to grand jury that Hersh invoked his right to remain silent*

Hersh also faults counsel for failing to move to dismiss the indictment based on the admission of evidence to the grand jury that Hersh had invoked his constitutional right to remain silent after his arrest.[3] As a consequence of the right to remain silent recognized in *Miranda*, prosecutors are prohibited from commenting on a defendant's post-*Miranda* silence. *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976); *United States v. Lopez*, 500 F.3d 840, 844 (9th Cir. 2007) (prosecutor's comment on defendant's post-*Miranda* silence violates *Doyle*). The rationale for this rule "rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial." *Wainwright v. Greenfield*, 474 U.S. 284, 291 (1986) (citation and internal

---

[3]    *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (a suspect has a constitutional right not to speak to police after he is arrested and given his *Miranda* warnings).

-9-

quotation marks omitted) (holding that prosecution may not use defendant's silence during case-in-chief).

In considering this claim on post-conviction review, the Superior Court concluded that, if Hersh's case had been resubmitted to the grand jury with the improper comments redacted, the State's evidence "would have been fully sufficient to support the same indictment on which Mr. Hersh was tried." *Hersh*, 2017 WL 2209873, at *3. The Court of Appeal agreed and affirmed on the ground that Hersh failed to show prejudice from counsel's inaction. *Id.*

The state courts' conclusion that Hersh did not show that a successful attack of the indictment on *Doyle* grounds would have led to a final dismissal, or at least an alteration, of the charges is both reasonable and fully supported by the record. For this reason, Hersh fails to show *Strickland* prejudice sufficient to warrant federal habeas relief here.

Hersh nonetheless argues that he is entitled to relief because "the prosecutor's comments of Hersh's invocation of the right to silence were part of a broader pattern of structural error that warranted a new trial." Docket No. 37 at 24. Hersh urges the Court to view the prosecutor's comments in conjunction with other defects in the grand jury proceedings, specifically a lack of sufficient evidence to support a finding of sexual penetration, to find structural error requiring automatic reversal and immune from the *Strickland* prejudice requirement. *See Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993).

"A structural error . . . is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Johnson v. United States*, 520 U.S. 461, 468 (1997) (quotation omitted). "Only in rare cases has [the Supreme] Court held that an error is structural." *Washington v. Recuenco*, 548 U.S. 212, 218 (2006). Those "rare cases" include the complete denial of counsel, a biased trial judge, racial discrimination in the selection of the grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable-doubt instruction. *Id.* at 219 n.2. Since *Recuenco*, the Supreme Court has found structural error in just two other situations: 1) an interested judge's unconstitutional failure to

recuse himself from a multi-member appellate panel, *see Williams v. Pennsylvania*, 136 S. Ct. 1899, 1909 (2016); and 2) denial of an individual's right to counsel of choice, *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006). The list of Ninth Circuit cases finding structural error is also short. *See Cordova v. Baca*, 346 F.3d 924, 930 (9th Cir. 2003) (violation of right to counsel not effectively waived where trial court failed to provide *Faretta* warnings to defendant representing himself); *Powell v. Galaza*, 328 F.3d 558, 566 (9th Cir. 2003) (holding that mandatory presumption in jury instruction which deprives defendant of a verdict decided by a jury violated the Sixth Amendment); *Sheppard v. Rees*, 909 F.2d 1234, 1237-38 (9th Cir. 1989) (denial of right to be informed of nature and cause of criminal accusation).

Based on the above, neither the Supreme Court nor the Ninth Circuit has identified the alleged errors underlying Hersh's claim here to be a structural error. Accordingly, the decision of the Court of Appeals cannot be deemed "contrary to" any holding from the Supreme Court. *See Lopez v. Smith*, 574 U.S. 1 (2014) (per curiam). Circumstances merely "'similar to'" Supreme Court precedents are not "'contrary to'" the Court's holdings and "where the precise contours of [a] right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Woods v. Donald*, 135 S. Ct. 1372, 1377-78 (2015) (internal quotation marks and quoted sources omitted). The state court was thus not unreasonable in applying a prejudice inquiry to determine whether relief was warranted. Hersh's structural error argument thus fails, and he is not entitled to relief on this ground.

Ground 3. *Failure to object to Suzanne's testimony that Hersh never denied the allegations*

Hersh next contends that counsel rendered ineffective service by failing to object to Suzanne's testimony inaccurately summarizing the contents of the first *Glass* warrant telephone call. The record reflects that Suzanne testified on cross-examination that Hersh did not deny their daughters' accusations of sexual abuse in that phone call. Rather, she stated that "John never admitted and he never denied." Docket No. 27-3 at 57. According to Hersh, counsel provided ineffective assistance by not objecting to the testimony because, as discussed with

-11-

regard to Ground 1, the transcript of the first *Glass* warrant shows that "Hersh repeatedly denied the allegations of sexual abuse during these portions of the recorded telephone conversation." *Hersh*, 2017 WL 2209873, at *4.

Hersh fails, however, to show that counsel's manner of handling the testimony was deficient, or that he was prejudiced by it. The record shows that the audio recording and transcript of the conversation was presented to the jury so it could hear and read for itself Hersh's repeated denials of his daughters' claims of sexual abuse. In summation, defense counsel stated:

> Listen carefully please to the recordings of whatever you'd like. I'm suggesting to you both *Glass* warrants especially. Listen to how [Hersh] says what he says. He — he's taken aback. He's surprised, and he denies and denies.

Docket No. 27-5 at 68.

The record simply does not show that counsel allowed Suzanne's testimony to go uncorrected. The Court of Appeals' rejection of this claim is thus both reasonable and fully supported by the record, and Hersh is not entitled to relief on it.

Ground 4.    *Failure to object to the admission of Hersh's prior convictions and incarceration*

Hersh additionally avers that counsel was ineffective for failing to object to the admission of Hersh's prior convictions and incarceration. The record reflects that defense counsel stipulated that the State could introduce evidence that Hersh had been incarcerated prior to the instant case in response to a mid-trial motion made by the prosecutor. Docket No. 27-3 at 19. Counsel then informed the jury that the previous incarceration was due to convictions for driving under the influence ("DUI"). *See, e.g.*, Docket No. 27-3 at 52.

In his petition for post-conviction relief, Hersh alleged that trial counsel acted incompetently when he elicited information from Suzanne about Hersh's prior incarcerations. But at the evidentiary hearing, counsel explained the basis for his actions. In his opening statement, counsel suggested that Suzanne had wanted to divorce Hersh, but that her religious views prevented her from initiating a divorce. Counsel implied that Suzanne made up the

-12-

allegations of sexual abuse so that she could not be blamed for seeking a divorce. In response, the prosecutor told the judge he wished to rebut the defense's suggestion by introducing evidence that Hersh had been jailed for various periods of time and Suzanne did not use those opportunities to initiate divorce proceedings. In argument on the prosecutor's motion, defense counsel conceded that evidence of Hersh's prior incarcerations might be admissible on that ground. The trial judge granted the motion, but clarified that the prosecution could introduce the fact of Hersh's prior incarcerations but not the reasons for it.

Trial counsel further testified at the evidentiary hearing that he had discussed the issue with Hersh and "'collectively decided [that] the benefits of attacking Hersh's wife on that point'" —*i.e.*, her purported desire for a divorce—"'outweighed the detriment of the door being opened [to evidence of Hersh's prior incarcerations].'" *Hersh*, 2017 WL 2209873, at \*9. Counsel further explained that, because the prosecutor was only allowed to admit the fact of the convictions rather than the reasons, he wanted to elicit that Hersh had been jailed only for DUI to alleviate any concern that the jury might assume that Hersh had been jailed for assaultive or abusive behavior. Based on counsel's proffered reasons and the deference afforded reasonable trial strategies, the trial court denied the PCR application, and the Court of Appeals affirmed.

Hersh fares no better on federal habeas review. The Court of Appeals' rejection of this claim is both reasonable and fully supported by the record. As the state courts concluded, defense counsel was acting in accordance with a rational tactical choice. While the strategy may have proven unsuccessful, ineffective assistance of counsel cannot be predicated on counsel's reasonable, albeit unsuccessful, tactical decisions. Hersh's challenge regarding his prior incarcerations thus fails.

Ground 5.     *Ineffective cross-examination of the forensic nurse*

Hersh further argues that trial counsel was ineffective in failing to effectively cross-

-13-

Case 3:17-cv-00185-JKS   Document 44   Filed 11/21/19   Page 13 of 16

examine the forensic nurse who performed the SART exam on Hersh's daughters.[4]  According to Hersh, the nurse's testimony was "false and misleading" because, although the testing was not conducted within 72 hours after the last reported incidence of abuse and its results were inconclusive, the nurse nonetheless described it as "consistent" with the State's theory.  Docket No. 37 at 35.

But, again, in testifying at the evidentiary hearing on Hersh's PCR application, defense counsel provided a sound reason for explaining why he did not dispute the results of the SART examination.  Specifically, counsel believed that the SART examination results were helpful to Hersh's defense because they did not establish sexual abuse.  Despite Hersh's arguments to the contrary, counsel provided a reasonable tactical basis for not objecting the nurse's testimony.  To the extent Hersh argues that counsel should have handled cross-examination differently, he does not articulate the specific approach counsel should have taken, nor does he demonstrate that he was prejudiced by counsel's chosen strategy.  Hersh therefore cannot prevail on this ineffective assistance claim.

Ground 6.       *Failure to seek admission of the prior abuse allegations against Hersh's father*

Finally, Hersh claims that counsel's failure to seek admission of the prior abuse allegations made against Hersh's father constituted ineffective assistance because the false allegations would have been probative of Suzanne's bias and credibility.  At trial, the State moved *in limine* to exclude under Alaska's rape-shield statute evidence that Hersh's father had sexually abused A.H.  The defense opposed the motion.  The defense did not challenge the veracity of the allegations but instead argued that it was admissible to show that A.H. may have

---

[4]   In the Amended Petition, Hersh argued that trial counsel should have sought to suppress "irrelevant and prejudicial testimony" by the forensic nurse who conducted the SART exam of Hersh's daughters.  Docket No. 22 at 11.  Respondent moved to dismiss this claim on exhaustion grounds.  Docket No. 28 at 17-18.  Hersh agreed that the title of this claim was not sufficiently similar to the claims presented in the state court proceedings.  Docket No. 31 at 9.  He thus recaptioned his claim as follows: "Trial counsel was ineffective in failing to engage in effective cross-examination with the forensic nurse regarding the significance of the victim's genital exams."  *Id.*

-14-

confused her father's conduct with her grandfather's conduct and that the abuse was probative of Suzanne's bias against Hersh. The trial judge did not allow the jury to hear evidence regarding the sexual abuse of A.H. by her grandfather, and the Court of Appeals affirmed that ruling. *Hersh*, 2011 WL 6450909 at *2-3.

On post-conviction review, Hersh argued that the sexual abuse allegations were false because the grandfather, who was incapable of achieving an erection, was physically incapable of sexually abusing A.H. Docket No. 22-2 at 24. Hersh argued that the false sexual abuse allegations supported the defense theory that Suzanne had a history of making false allegations and, after Hersh threatened to leave her, used the allegations to prevent Hersh from taking their children away. *Id.* In considering this claim on appeal of the PCR denial, the Court of Appeals rejected it as follows:

> [A]s Judge Smith declared in his written decision, Hersh "cannot have it both ways". If Hersh knew about his father's medical condition, or if Hersh thought for any other reason that A.H.'s accusation against his father was false, then Hersh "could have corrected the matter at the time Mr. Weinraub raised the issue." But instead, Hersh apparently allowed Weinraub to make accusations of sexual abuse against Hersh's father when Hersh knew that these accusations were not true.
> Before Hersh took the stand at the evidentiary hearing on his petition for post-conviction relief, Judge Smith warned Hersh that he would "have to explain why [he] let [Weinraub] go through an entire [pre-trial] hearing making an argument that was predicated on [the truth of A.H.'s accusation against Hersh's father]", instead of informing Weinraub that A.H.'s accusation could not be true. But when Hersh took the stand at the evidentiary hearing, he never offered an explanation for his allowing Weinraub to litigate the matter in this fashion.
> Just as importantly, even assuming that Weinraub could reasonably have handled this matter differently, this does not show that Weinraub's representation of Hersh was incompetent.
> Hersh now argues that Weinraub should have doubted A.H.'s report, and that Weinraub should have investigated the matter to see if this alleged act of sexual abuse by Hersh's father was medically possible. But there was an obvious tactical benefit in arguing that the reported act of sexual abuse had occurred. And it was Hersh's burden to show that no reasonably competent defense attorney would have handled this matter as Weinraub did.
> For these reasons, we uphold Judge Smith's ruling that Hersh failed to establish his claim of ineffective assistance of counsel on this point.

*Hersh*, 2017 WL 2209873, at *6-7 (footnote omitted).

The Court of Appeals' conclusion is both reasonable and fully supported by the record. For the reasons persuasively articulated by the state courts, Hersh is not entitled to federal

-15-

habeas relief on this claim either.

## V. CONCLUSION AND ORDER

Hersh is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to grant a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 21, 2019.

                                               /s/ James K. Singleton, Jr.
                                               JAMES K. SINGLETON, JR.
                                               Senior United States District Judge